IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| NASEEN SHARIF-MITCHELL, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 20-cv-2400 |
| MEMPHIS LIGHT, GAS & WATER | ) | |
| Defendant. | ) | |

### ORDER GRANTING SUMMARY JUDGMENT

This is an employment discrimination case. On August 8, 2022, Defendant Memphis Light, Gas & Water ("MLGW") moved for summary judgment on Plaintiff Naseen Sharif-Mitchell's claims for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12117. (ECF No. 55 (the "Motion").) Defendant renewed its Motion on September 22, 2022. (ECF No. 59.) Plaintiff responded on October 21, and Defendant replied on November 4. (ECF Nos. 65, 69.) The Motion is now ripe for decision. For the following reasons, the Motion, ECF No. 55, is GRANTED.

**I. Background**

Plaintiff was employed by MLGW in various positions beginning in 2004. (ECF No. 1 at 2.) Plaintiff worked as a teller and service adviser until 2016, when she secured a position as a water treatment operator. (ECF No. 56-1, Pl. Dep. 26:18–30:8.) In that role, Plaintiff replenished stocks of chemicals, backwashed filters, tested water quality, and loaded and unloaded supplies. (Id. at 35:1–37:10.) Plaintiff worked primarily at the Sheehan Pumping Station and reported to Roland Person, her supervisor, and Wendel Hanks, the foreman. (Id. at 33:14–18, 36:2–6.)

Plaintiff says that she began to experience retaliation and discrimination based on her age and race after starting as a water treatment operator. Plaintiff is African-American and was approximately forty-nine years old at the time of the alleged discrimination. (Id. at 10:4, 145:24–146:3.) She cites a number of examples which she says demonstrate MLGW's discriminatory practices. Plaintiff says that she was sometimes required to move and lift heavy bags of chemicals without assistance while a younger, white coworker stayed in the office to do paperwork. (Id. at 38:1–41:20.) When the younger, white coworker otherwise would have been scheduled to work at one of the more difficult water treatment plants, the coworker was instead directed to do paperwork at the central office. (Id. at 46:16–47:11.) Plaintiff

2

recounts an instance in which she and other African-American coworkers were berated and made to sign a disciplinary form because they did not call the foreman to let him know they had finished their shift, although Plaintiff had not been told she needed to make such a call. (Id. at 145:21–147:4.) Plaintiff also asserts that her requests for overtime or for time off were treated less favorably than those of her white colleagues. (Id. at 147:22–149:15.) In addition to discrimination based on race and age, Plaintiff claims that certain challenges she faced, such as her difficulties in getting overtime and off time and the instance in which she was berated by the foreman, were retaliation for filing grievances with her union. (Id. at 145:24–147:7, 159:14–160:4.)

Plaintiff's grievances increased when she was injured in a workplace accident. On February 11, 2018, Plaintiff was loading wooden pallets onto a company truck when she saw a rooster rushing toward her. (Id. at 57:10-23, 77:15-17.) Startled, Plaintiff dropped one of the wooden pallets, injuring her foot. (Id. at 57:10-23.) Plaintiff did not report her injury at that time and completed her work for the day. (Id. at 61:1-16, 73:21-24.) Three days later, on February 14, Plaintiff was seen by a physician, who placed Plaintiff's injured foot in a "boot" and provided a doctor's note saying that Plaintiff should be placed on light duty. (Id. at 68:4-6, 71:24-73:12, 79:1-8; ECF

No. 56-5.) When plaintiff reported to work the next day, her supervisor sent her to Defendant's medical services office, where she filled out a report of her injury. (ECF No. 56-1, Pl. Dep. 73:9-74:6.) Plaintiff was placed on unpaid leave and remained on leave until her eventual resignation. (ECF No. 56-7, Eric Conway Decl. at 2.)

After Plaintiff reported her injury, a workers' compensation claim was filed on her behalf. (ECF No. 56-1, Pl. Dep. 83:13-84:16.) The claim was denied because the examining physician determined that, in light of Plaintiff's pre-existing injury to the same foot, Plaintiff's disability was not primarily caused by a work-related injury. (Id. at 83:2-84:16.) Plaintiff did not appeal. (Id.) Although Plaintiff did not receive workers' compensation benefits and was not paid during her leave by MLGW, she began receiving short-term disability benefits in March 2018 from MLGW's insurer. [1] (Id. at 95:16-23, 97:20-98:17.) Eventually, the short-term disability benefits lapsed, and Plaintiff's application for long-term benefits was denied.[2] (Id. at 122:17-123:6.) A few days after that denial, on July 24, 2019, Plaintiff resigned. (Id. at 130:13-131:2.)

---

[1] Those benefits, according to Plaintiff, were significantly less than what she had been receiving from MLGW. (ECF No. 56-1, Pl. Dep. 120:13-23.)

[2] It is not clear from the record when Plaintiff's short-term disability benefits ended. (Compare ECF No. 56-2, and ECF No. 57 at 5, 7, with ECF No. 56-1, Pl. Dep. 120:3-16.)

On December 1, 2018 -- while Plaintiff was on leave and before her resignation -- Plaintiff met with Linda Ford, MLGW's Human Resources Compliance Coordinator, and Vernica Davis, MLGW's Medical Services Coordinator. (ECF No. 56-8, Linda Ford Dep. 38:23-40:1.) The purpose of the meeting was to ensure compliance with the ADA by reviewing Plaintiff's job description and deciding what accommodations Plaintiff might need in her work. (Id.) During the meeting, Plaintiff admitted that she would be unable to perform many of her job functions, such as loading and unloading, and would need frequent breaks when walking or climbing stairs. (ECF No. 56-6, Vernica Davis Dep. 26:2-19; ECF No. 56-1, Pl. Dep. 91:6-93:14.) Plaintiff suggested that another employee be assigned to help her complete the tasks she could not do alone. (ECF No. 56-1, Pl. Dep. 92:4-11.) Davis and Ford transmitted that suggestion to MLGW's ADA committee, which rejected it. (ECF No. 56-8, Linda Ford Dep. 41:15-42:20.) The committee did not discuss other possible accommodations. (ECF No. 56-6, Vernica Davis Dep. 27:20-28:21.)

Sometime during 2018 or 2019, another water treatment operator, Tiffany Carson, was injured by a fall from a ladder while on the job. (ECF No. 56-12, Tiffany Carson Dep. 15:18-22, 20:13-27:12.) Carson is white and was approximately thirty-eight or thirty-nine years old at the time of her fall. (Id. at 6:20-22, 43:17-23.) Carson was approved for light duty while she recovered

and spent less than ninety days in a secretarial-type position before returning to her regular duties. (Id. at 27:24-28:22.) According to MLGW, the reason that Carson was placed on light duty but Plaintiff was placed on unpaid leave was that Carson's workers' compensation claim was approved and Plaintiff's was rejected. (ECF No. 56-6, Vernica Davis Dep. 31:17-32:17.) MLGW explains that it has a policy of granting light duty only to those who have a workplace-related injury, as determined by whether the injured employee is eligible for workers' compensation. MLGW's Manager of Employee Services and Talent Acquisition and Medical Services Coordinator both provided sworn statements to that effect. (ECF No. 56-6 at 9:18-20, 32:4-17; No. 56-7 at 1-2.) Although MLGW's written policies do not contain an explicit statement that light duty is unavailable to those who have been denied workers' compensation, its policy on "Workers' Compensation Program (Occupational Injury/Illness)" makes provision for light duty. (ECF No. 56-7 at 4-5, 13.) The provision for light duty is absent from the parallel written policy covering "Sick Leave, Short Term Disability, and Long Term Disability (Non-Occupational Injury/Illness)." (ECF No. 56-7 at 18-31.)

## II.  Jurisdiction

Plaintiff's causes of action arise under Title VII, the ADA, and the ADEA, which are federal statutes. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can meet this burden by showing that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of her case. Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). "[I]n order to survive a summary-judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as

to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A scintilla of evidence favoring the nonmoving party does not establish a genuine issue of material fact. Id.

The nonmoving party must point to concrete evidence on which a reasonable juror could return a verdict in her favor; a district court will not "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989); accord Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Audi AG v. D'Amato, 469 F.3d 534, 545 (6th Cir. 2006). Courts will not, however, make strained or unreasonable inferences. Id.

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" FDIC v. Jeff Miller Stables, 573 F.3d

289, 294 (6th Cir. 2009) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986)).

## IV.  Analysis

### A. Limitations Period

Employment discrimination claims under Title VII, the ADEA, and the ADA are all subject to the limitations period in 42 U.S.C. § 2000e-5. <u>Amini v. Oberlin Coll.</u>, 259 F.3d 493, 498 (6th Cir. 2001) (Title VII and ADEA); <u>Booth v. Nissan N. Am., Inc.</u>, 927 F.3d 387, 392 (6th Cir. 2019) (ADA). That statute provides that a charge of discrimination must be filed with the Equal Employment Opportunity Commission (EEOC) within 180 days of the occurrence of the allegedly unlawful employment practices. 42 U.S.C. § 2000e-5(e)(1). If, however, the charge of discrimination is also filed with "a State or local agency with authority to grant or seek relief from" the unlawful employment practice, the employee has 300 days to file. <u>Id.</u> Once a charge of discrimination is filed, the EEOC will generally issue a right-to-sue letter, whereupon the aggrieved employee has ninety days to file suit.[3] <u>Id.</u> § 2000e-5(f)(1).

---

[3] Plaintiff's right-to sue letter is dated March 4, 2020. (ECF No. 1-3.) Plaintiff brought suit on June 5, 2020. (ECF Nos. 1.) Although that time interval is greater than ninety days, it is within the additional five-day grace period provided in this circuit for mailing. <u>See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.</u>, 209 F.3d 552, 557-58 (6th Cir. 2020).

Plaintiff filed her charge of discrimination with the Tennessee Human Rights Commission, which is empowered to address claims of race, age, and disability discrimination. ECF No. 1-2; see Booth, 927 F.3d at 392; Tartt v. City of Clarksville, 149 F. App'x 456, 460 (6th Cir. 2005). Plaintiff's charge and this lawsuit are limited to conduct occurring up to 300 days before the filing of her charge and no earlier.

Plaintiff's charge of discrimination was filed with the EEOC on February 21, 2019. (ECF No. 1-2.) She may sue only for discrimination or retaliation occurring on or after April 27, 2018. Because Plaintiff's injury occurred in February 2018 and she began her period of leave shortly thereafter, she cannot sue for any allegedly discriminatory or retaliatory conduct which occurred on the job. Only conduct from April 27, 2018 or later, when Plaintiff was already on leave, can form the basis of a non-time-barred claim.[4]

**B. Abandonment of Claims**

MLGW asserts in its summary judgment reply brief that Plaintiff has abandoned all of her claims by failing to respond to the Motion adequately. (ECF No. 69 at 2.) The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to

---

[4] Plaintiff acknowledges in her complaint that many of her allegations of discrimination are outside the 300-day window. (ECF No. 1 at 3.)

address it in response to a motion for summary judgment." Brown v. VHS of Mich., Inc., 545 F. App'x 368, 372 (6th Cir. 2013); see also Nathan v. Great Lakes Water Auth., 992 F.3d 557, 564 n.1 (6th Cir. 2021) (stating that claims had been abandoned by failure to brief in response to summary judgment motion before district court); Murphy v. Ohio State Univ., No. 2:11-cv-238, 2012 U.S. Dist. LEXIS 140014, at *10-11 (S.D. Ohio Sept. 28, 2012) (collecting cases). A district court is not required to address an abandoned claim on the merits. See Hicks v. Concorde Career Coll., 449 F. App'x 484, 487 (6th Cir. 2011).

Although the complaint states claims for discrimination and retaliation under Title VII, the ADEA, and the ADA, none of these statutes is cited or even mentioned in Plaintiff's response to the summary judgment motion. (ECF Nos. 1, 65.) Plaintiff's brief cites only two Tennessee state court cases, which are used to support propositions pertaining to the standard for summary judgment and the interpretation of contracts under Tennessee law. (ECF No. 65 at 2.)

Plaintiff makes some mention of a relevant legal framework in that she "gladly adopts the Defendant's description of the 4 step test for a discrimination test [sic]." (Id. at 5.) Plaintiff does not say, however, which statute she is referring to or which four-prong test she is adopting. (Id.) The matter is complicated by Plaintiff's assertion that the first three prongs of the test

11

were conceded by MLGW -- a statement which is not accurate about any of the four-part tests MLGW cites in its Motion.[5] (ECF No. 65 at 5; No. 56 at 10-14, 17-19.) Plaintiff's response to the Motion is not a careful, detailed engagement with the analytical frameworks established by Sixth Circuit precedent to assess alleged employment discrimination.

Despite these shortcomings, Plaintiff's claims of discrimination are not abandoned. Courts finding that claims are abandoned have more often done so when a claim is completely, rather than partially, omitted from a response to a summary judgment motion. See Conner v. Hardee's Food Sys., Inc., 65 F. App'x 19, 24 (6th Cir. 2003) (finding claim abandoned where plaintiffs "completely failed to respond" to summary judgment arguments); Colston v. Cleveland Pub. Libr., No. 1:12-CV-204, 2012 U.S. Dist. LEXIS 113527, at *4 n.2 (N.D. Ohio Aug. 13, 2012) (ruling claim was abandoned where summary judgment response "did not respond or even mention this claim"); Anglers of the Au Sable v. U.S. Forest Serv., 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008)

---

[5] Plaintiff referred to the test she meant to adopt as a test "for discrimination," as opposed to retaliation, and argued that she satisfied the fourth prong because she "was treated differently than another employee who had also been hurt at work," which is similar to the fourth prong of the tests for a Title VII or ADEA prima facie case of discrimination. (ECF No. 65 at 6; see also No. 56 at 10, 13.) From this, it can be inferred that Plaintiff probably means to adopt the four-part test for a prima facie case of racial discrimination under Title VII, the similar test for a prima facie case of age discrimination under the ADEA, or both.

(holding that plaintiffs had abandoned claim because they "did not write a word about the . . . issue"). But see Murphy, 2012 U.S. Dist. LEXIS 140014, at *10-11 (holding Title VII claim abandoned where plaintiff addressed claim by setting forth standard, but failed to make argument under that standard).

Plaintiff makes at least some reference to the legal framework to test for discrimination under Title VII and the ADEA. (ECF No. 65 at 5-6.) Her discussion of Defendant's policy of giving preferential treatment to employees whose workers' compensation claims are granted is relevant to her ADA discrimination claim. (See id. at 3-5.) Plaintiff's claims of discrimination have not been abandoned.

Plaintiff's claims of retaliation have been abandoned. MLGW's Motion clearly asserted grounds for summary judgment on all retaliation claims, arguing, among other bases, that there was no evidence supporting a causal connection between any protected activity and an adverse action taken against Plaintiff. (ECF No. 56 at 19.) Plaintiff's response to the Motion does not respond to that argument. (See ECF No. 65.) She does not mention retaliation at all. (Id.) Plaintiff has abandoned her claims of retaliation under Title VII, the ADEA, and the ADA. The Court will not consider those claims on the merits.

### C. Title VII Discrimination

A plaintiff may support a claim of discrimination under Title VII through either direct or circumstantial evidence. Redlin v. Grosse Pointe Pub. Sch. Sys., 921 F.3d 599, 606 (6th Cir. 2019). If the plaintiff relies on circumstantial evidence, her claims are evaluated under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Redlin, 921 F.3d at 606. Under that framework, the plaintiff must first establish a prima facie case of discrimination. Id. That burden "is not an onerous one" and may be satisfied by showing that the plaintiff "1) is a member of a protected class; 2) was qualified for his job; 3) suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." Id. at 606-07 (internal quotation marks omitted). If the plaintiff can establish a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for' the adverse employment action." Id. at 607 (quoting White v. Baxter Healthcare Corp., 533 F.3d 381, 397 n.9 (6th Cir. 2008)). If the defendant does so, the burden shifts again to the plaintiff, which must put forth evidence that the proffered nondiscriminatory reasons are a pretext for discrimination. Id.

14

There is no genuine dispute of material fact that could allow Plaintiff's Title VII discrimination claim to proceed to trial. Because Plaintiff does not cite any direct evidence of racial discrimination, her claim must be analyzed under the McDonnell Douglas framework. Redlin, 921 F.3d at 606. Assuming Plaintiff can establish a prima facie case of racial discrimination, her Title VII claim still fails because MLGW has produced a legitimate, nondiscriminatory reason for its decision not to grant Plaintiff light duty.[6] MLGW has provided extensive evidence that, under its established policies, it grants light duty only to those who sustain a workplace-related injury. That grant is determined by whether the injured employee's workers' compensation claim is approved. The existence of the policy is supported both by the sworn statements of MLGW officials and by documentary evidence. (ECF No. 56-6 at 9:18-20, 32:4-17; No. 56-7 at 1-2, 4-5, 13, 18-31.) Defendant makes a strong showing that

---

[6] MLGW's failure to assign Plaintiff to light duty appears to be the only possible adverse action about which Plaintiff can complain. All potential adverse actions from before April 27, 2018 are time barred. Although Plaintiff alleged in her complaint that her resignation was a constructive discharge, ECF No. 1 at 7, she makes no mention of that theory in her summary judgment briefing, ECF No. 65, and thus abandons the issue. Plaintiff's response to the Motion briefly mentions an individual in a wheelchair who allegedly received unspecified accommodations, but Plaintiff fails to explain what accommodations were provided to that individual and does not state that the failure to provide those unspecified accommodations was the adverse action taken against her. (Id. at 2.) The refusal to assign Plaintiff to light duty will thus be treated as the adverse action for which MLGW must produce a legitimate, nondiscriminatory reason because Plaintiff fails to identify any other potential adverse action.

15

its decision not to grant Plaintiff light duty was based not on race, but on its policy of making such assignments only to those deemed eligible for workers' compensation.

Although Plaintiff suggests that MLGW's policy violates the ADA, that has no effect on whether the policy is a legitimate, nondiscriminatory reason under Title VII. In a Title VII race discrimination claim, the "ultimate question" is whether "the defendant intentionally discriminated against the plaintiff" on the basis of race. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981). Showing that an employer's policy is impermissible under a law unrelated to racial discrimination, such as the ADA, does not prove that the employer's reliance on that policy must have been discrimination based on race. See Harrigan v. Dana Corp., 612 F. Supp. 2d 929, 944 (N.D. Ohio 2009) ("[A]lthough Defendant's reliance on its policy was mistaken and unlawful, it is still a nondiscriminatory explanation."); McClain v. Detroit Ent., LLC, 458 F. Supp. 2d 427, 438 (E.D. Mich. 2006) (finding, in McDonnell Douglas burden-shifting context, that employer's leave policy violated the FMLA, but that applying that policy was nevertheless a nonretaliatory reason for employee's discharge); Hoffman v. Pro. Med Team, 394 F.3d 414, 422 (6th Cir. 2005) (stating the circuit's Title VII cases "emphasize that the employer's reason for discharge does not have to be a good reason . . . [but] must merely be based on

16

grounds not proscribed by the statute"). MLGW's reliance on a well-established, racially neutral workplace policy is a nondiscriminatory reason for MLGW's denial of light duty notwithstanding Plaintiff's suggestion that the policy is incompatible with the ADA.

Given that MLGW has provided a legitimate, nondiscriminatory reason for the adverse action of denying light duty, the burden shifts to Plaintiff to produce evidence that MLGW's reason is a pretext for racial discrimination. See Redlin, 921 F.3d at 607. Plaintiff fails to do so. There is no evidence of any racially biased application of the policy. Plaintiff does not identify any white worker -- or, indeed, any individual -- who received light duty despite having a workers' compensation claim denied. She does not point to any statement or indication in the record that MLGW or its officials considered any factor other than the denial of her workers' compensation claim in denying light duty.

Plaintiff correctly notes that MLGW's written policies do not contain an explicit statement that light duty is available only to those whose workers' compensation claims are approved. (ECF No. 65 at 5.) Nevertheless, the written policies support, rather than undermine, MLGW's narrative that light duty is available only to those whose workers' compensation claims are accepted. MLGW's written policies are structured so that workers'

compensation matters and light duty are placed in one policy, and non-occupational injuries and short-term disability are placed in another policy. (See ECF No. 56-5 at 4-31.) That clearly indicates that injuries resulting in approved workers' compensation claims are treated differently than other injuries.[7]

Plaintiff has not created a genuine dispute of material fact about whether MLGW's reason for denying her light duty was a pretext for racial discrimination. MLGW is entitled to summary judgment on Plaintiff's claim of racial discrimination under Title VII.

### D. ADEA Discrimination

The framework for evaluating claims of ADEA discrimination is closely related to the Title VII framework. Deleon v. Kalamazoo Cnty. Rd. Comm'n, 739 F.3d 914, 918 (6th Cir. 2014) ("Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework."); see also Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834 (6th Cir. 1996) ("[C]ourts routinely employ Title VII and ADEA case law interchangeably."). Absent direct evidence of discrimination, a plaintiff may establish a prima facie case of age discrimination

---

[7] The portion of the written policy dealing with light duty provides that, after ninety days of light duty, "the employee will be placed off work and their salary will be adjusted to the amount required under the Tennessee Workers' Compensation Law." (ECF No. 56-7 at 13.) The policy unambiguously shows that it is expected that those on light duty will be subject to the workers' compensation law.

under the ADEA by showing that "(1) he was a member of the projected class, i.e., 40 years old or older, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by a substantially younger employee." Deleon, 739 F.3d at 918. "In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show she was treated differently from similarly-situated individuals." Policastro v. Nw. Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002).

Once a plaintiff has made a prima facie case of discrimination, the McDonnell Douglas framework applies. Spengler v. Worthington Cylinders, 615 F.3d 481, 491 (6th Cir. 2010). The employer may attempt to show a non-culpable reason for its actions, and the employee may then seek to demonstrate that the proffered reason is a pretext. Id.

For the same reasons that Plaintiff cannot prevail on her Title VII discrimination claim, she cannot show a genuine dispute of material fact that would allow her to proceed with her ADEA claim. Allegations of discrimination occurring before April 2018 are time-barred. Assuming Plaintiff can make a prima facie case, MLGW has carried its burden of producing a legitimate, nondiscriminatory reason for its failure to assign Plaintiff to light duty. The sworn statements and written policies already discussed show that MLGW failed to provide Plaintiff with a light

duty assignment because its policy restricted access to such assignments to employees with a successful workers' compensation claim. (ECF No. 56-6 at 9:18-20, 32:4-17; No. 56-7 at 1-2, 4-5, 13, 18-31.) Plaintiff does not identify any evidence tending to show that Defendant's policy was a pretext for age discrimination. Plaintiff has failed to identify a genuine dispute of material fact, and MLGW is entitled to judgment as a matter of law on Plaintiff's ADEA discrimination claim.

**E. ADA Claim for Failure to Accommodate**

The ADA's text provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Id. § 12112(b)(5).

The employee bears the initial burden of making a prima facie case of a failure to accommodate. Morrissey v. Laurel Health Care Co., 943 F.3d 1032, 1038 (6th Cir. 2019). An employee may establish a prima facie case by showing that, at the time of the alleged discrimination, (1) she was disabled under the ADA, (2) she was otherwise qualified for her position, with or without reasonable accommodation, (3) the employer knew or had reason to know about her disability, (4) she requested an accommodation,

and (5) the employer failed to provide the necessary accommodation. Brumley v. UPS, 909 F.3d 834, 839 (6th Cir. 2018). Because the failure to accommodate is itself the discriminatory act, these claims necessarily involve direct evidence, and the McDonnell Douglas framework does not apply. Id. Once a plaintiff makes a prima facie case of a failure to accommodate, the burden shifts to the employer to show that the "proposed accommodation will impose an undue hardship." Id. (quoting Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007)).

To carry her burden of showing that she is "otherwise qualified" for the job she holds or seeks, an employee must show that she "can perform all of the essential functions of her job, whether accommodated or not." Williams v. AT&T Mobility Servs., LLC, 847 F.3d 384, 391 (6th Cir. 2017); see also 42 U.S.C. § 12111(8) (defining "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). An employee may also argue that she is qualified for a position with one or more allegedly essential functions eliminated, in which case the employer bears the burden of showing that the challenged function is essential. Kleiber, 485 F.3d at 869.

Plaintiff cannot establish a prima facie case of failure to accommodate.[8] Although Plaintiff, in her response to the Motion, does not specifically identify the accommodations to which she believes she was entitled, ECF No. 65, two potential accommodations are apparent from the record.

First, in her meeting with MLGW officials, Plaintiff suggested she be provided with an assistant to help her do her water treatment operator job. The Court construes Plaintiff's brief as arguing MLGW impermissibly failed to accommodate her by refusing to provide an assistant. Plaintiff cannot make a prima facie case under this theory, however, because she was not qualified for the water treatment operator position and because the proposed accommodation was not reasonable.

Second, Plaintiff appears to argue that she should have been assigned to light duty, as was her coworker, Tiffany Carson.[9]

---

[8] Plaintiff spends much of her brief arguing about MLGW's policies, which she contends are not adequate reason to treat her differently than other injured or disabled employees. (ECF No. 65 at 3-5.) It is generally true that reliance on an official policy alone does not excuse conduct that contravenes the ADA. E.g., Morrissey, 946 F.3d at 303 (explaining that blanket policy of refusing accommodation for those suffering non-work-related disabilities would not excuse ADA violation). Arguing that Defendant's policy cannot excuse an ADA violation is no substitute for showing an ADA violation in the first place.

[9] Although Plaintiff does not specifically mention light duty in her summary judgment briefing, she spends much of her brief arguing that MLGW's policies were not an adequate basis to treat her differently than other employees who were allegedly accommodated. (ECF No. 65 at 3-5.) That argument most clearly applies to Tiffany Carson. She received light duty after a workplace injury, and MLGW concedes she was treated differently because of Defendant's policy of giving light

That proposed accommodation was not reasonable, however, because Plaintiff was not entitled to have a temporary light duty position converted to a permanent position for her benefit. To the extent Plaintiff sought light duty as a temporary accommodation, her argument fails because (1) she did not show that she requested light duty when she could reasonably have been expected to recover by the end of the temporary light duty, and (2) she did not respond to MLGW's argument that medical leave with short-term disability benefits was a reasonable alternative accommodation.

> **1. Plaintiff Was Not Qualified for the Water Treatment Operator Position, and Her Proposed Accommodation Was Not Reasonable.**

After her accident, Plaintiff was not qualified for her position as a water treatment operator. In her December 2018 discussion with MLGW officials about the job functions she would be able to perform, Plaintiff confirmed that she would have

---

duty to those who receive workers' compensation. (ECF No. 56-12, Tiffany Carson Dep. 20:7-23; No. 56-6, Vernica Davis Dep. 31:17-32:17.) Plaintiff briefly alludes to an individual in a wheelchair at MLGW's call center who allegedly received unspecified accommodations. (ECF No. 65 at 2.) By failing to brief any accommodations that individual received or why Plaintiff was entitled to the same, Plaintiff has abandoned any argument relying on the unspecified accommodations to the wheelchair-bound individual. To the extent Plaintiff argues she should have been accommodated with a job in the call center like the individual in a wheelchair, Plaintiff's argument fails because she does not assert, much less cite evidence, that any position at the call center was vacant when she was seeking accommodation. See Kleiber, 485 F.3d at 870 (concluding that reasonable jury could not conclude that vacancy existed because plaintiff had provided no evidence of one).

difficulty lifting, navigating steps, and loading and unloading. (ECF No. 56-1, Pl. Dep. 91:14-93:14.) One MLGW official said, and Plaintiff does not dispute, that during the meeting, Plaintiff indicated the only function of her job she could perform unaided was driving from treatment plant to treatment plant. (ECF No. 56-8, Linda Ford Dep. 40:9-41:2.) Numerous months after her injury, Plaintiff's physician's instructions restricted her from lifting more than twenty pounds. (ECF No. 56-1, Pl. Dep. 99:7-15.) Plaintiff does not dispute that many manual tasks, such as lifting and pouring chemicals, cleaning filters, and loading and unloading supplies, are essential functions of the water treatment operator position. (Id. at 34:18-35:19.) Plaintiff indicated she would be unable to perform many of these functions without accommodation. (Id. at 91:14-92:18.) Absent an accommodation, then, Plaintiff was not qualified for the water treatment operator position because she cannot fulfill its essential functions.

Plaintiff's proposed accommodation is not reasonable. The only potential accommodation identified by Plaintiff to allow her to perform the water treatment operator job was the provision of another individual during Plaintiff's shifts to assist or substitute in completing the necessary tasks. (Id. at 92:4-18.) Although a reasonable accommodation might include "job restructuring, part-time or modified work schedules, [or]

24

reassignment to a vacant position," 42 U.S.C. § 12111(9), the ADA "does not require employers to create a new position for a disabled employee who can no longer perform the essential functions of his job." Smith v. Ameritech, 129 F.3d 857, 867 (6th Cir. 1997). The ADA does not "require employers to accommodate individuals by shifting an essential job function onto others." Hoskins v. Oakland Cnty. Sheriff's Dep't, 227 F.3d 719, 729 (6th Cir. 2000). Plaintiff's proposed accommodation would force Defendant to either create a new position -- that of an additional, assistant water treatment operator to help Plaintiff complete her job -- or reallocate Plaintiff's duties to other employees. Either alternative is more than the ADA requires. Because Plaintiff was unable to perform her essential job functions without accommodation and because the only proposed accommodation that might allow her to complete the functions of the water treatment operator position was not reasonable, Plaintiff was not qualified under the ADA for the position of water treatment operator.

### 2. Plaintiff Has Failed to Show an Entitlement to Light Duty.

Plaintiff's only remaining theory to support a failure-to-accommodate claim is that she was wrongly denied reassignment to light duty. Plaintiff's fellow water treatment operator, Tiffany Carson, was assigned to light duty after a workplace injury.

(ECF No. 56-12, Tiffany Carson Dep. 20:7-23.) During that time, Carson did essentially sedentary work, completing paperwork relating to the use of and billing for certain water meters. (Id. at 27:24-29:3.) Because of the significant differences in responsibilities between the water treatment operator position and Carson's experience with light duty, light duty is not simply a modification of the water treatment operator position, but a different job entirely. The Court will thus analyze Plaintiff's request for light duty under caselaw pertaining to ADA requests for reassignment to an alternative position.[10]

Plaintiff's light duty claim fails because employers are not required under the ADA to convert a temporary relief assignment to a permanent position. To the extent Plaintiff seeks relief for the denial of light duty as a temporary accommodation, her claim fails because she has not shown that she requested light duty when temporary light duty could reasonably be expected to conclude in Plaintiff's return to regular work, and because Plaintiff did not respond to MLGW's argument that medical leave with short-term disability benefits was a reasonable alternative accommodation.

---

[10] To the extent Plaintiff conceives "light duty" as a modification of her water treatment operator position rather than an assignment to work similar to Carson's, Plaintiff lost that argument by failing to brief it. See ECF No. 65; Kleiber, 485 F.3d at 870 (stating that plaintiff bears initial burden of proposing accommodation).

### a. Light Duty as a Permanent Accommodation

"[R]eassignment to a vacant position" is one form of reasonable accommodation for a disability. 42 U.S.C. § 12111(9). "An employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the [c]ompany for which that employee is otherwise qualified." Burns v. Coca-Cola Enters., 222 F.3d 247, 257 (6th Cir. 2000). As discussed, however, employers are not required to create new positions; "an employer need only reassign a disabled employee to a vacant position." Id. (emphasis added). Nor are employers required to convert a temporary position for recuperating employees to a permanent position. Hoskins, 227 F.3d at 730 (finding that "turning a rotating or relief position into a permanent position" was not a reasonable accommodation); Meade v. AT&T, 657 F. App'x 391, 396 (6th Cir. 2016) ("[A]n employer need not create a permanent light-duty position."); Thompson v. Henderson, 226 F. App'x 466, 474 (6th Cir. 2007) ("Defendant is simply not required to engage [Plaintiff] in temporary light-duty assignment in perpetuity."); Brown v. Chase Brass & Copper Co., 14 F. App'x 482, 488 (6th Cir. 2001) ("[A]n employer has no obligation to create a permanent light duty post when none previously existed.") "[I]t would frustrate the ADA for permanently impaired employees to fill temporary light-duty assignments when those

27

jobs have been set aside specifically for recuperating employees." Hoskins, 227 F.3d at 730 n.4.

Plaintiff's needs were long-term. In December 2018, when Plaintiff and MLGW engaged in the interactive ADA process to determine what accommodations Plaintiff might need, Plaintiff was under instructions from her doctor to seek sedentary work and avoid lifting more than twenty pounds. (ECF No. 56-1, Pl. Dep. 99:7-15, 91:14-93:14.) As of the time of her deposition in February 2022, Plaintiff remained unable to move some of her toes and required a medical boot to walk. (Id. at 56:11-17.)

The record demonstrates that light duty is available at MLGW only as a temporary assignment, not a permanent position. Under Defendant's written policies, "[i]f the employee has not been returned to regular duty at the end of the 90 calendar day period following an injury, the light duty assignment will cease and the employee will be placed off work." (ECF No. 56-7 at 13.) Plaintiff's injured coworker, Tiffany Carson, testified in her deposition that her period of light duty lasted fewer than ninety days. (ECF No. 56-12, Tiffany Carson Dep. 28:14-16.) Plaintiff does not point to any employee who received light duty for more than ninety days or to any other evidence that a permanent light duty position existed. Plaintiff's disability has been long-lasting. Plaintiff was not entitled to have MLGW's temporary

light duty assignment be made into a permanent position for her benefit. See Hoskins, 227 F.3d at 730.

### b. Light Duty as a Temporary Accommodation

Plaintiff has not shown that she was entitled to light duty as a temporary measure. First, Plaintiff's summary judgment brief does not assert that Plaintiff specifically requested light duty as an accommodation, let alone that she requested it at a point before it became obvious that Plaintiff needed a permanent, not a temporary, accommodation. Plaintiff's deposition shows that, at some point in 2019, she requested to be put back to work with unspecified accommodation. (ECF No. 56-1, Pl. Dep. 101:22-102:5.) That might be interpreted as a request for light duty. At that point, however, Plaintiff had been unable to complete her regular work for at least ten months, since February 2018. (ECF No. 56-7, Eric Conway Decl. at 2.)

The Sixth Circuit has held that, "when the requested accommodation has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide." Walsh v. UPS, 201 F.3d 718, 727 (6th Cir. 2000). Plaintiff does not give any reason MLGW might have had in 2019 to believe, after ten or more months of little change in Plaintiff's condition, that a temporary period of light duty would permit Plaintiff to be able to resume her normal duties.

(See ECF No. 65.) Plaintiff does not point to any earlier request for light duty. Assuming that Plaintiff's comments in 2019 could be construed as a request for light duty, and even disregarding the fact that Plaintiff had evidently not recovered in 2022, a 2019 request for light duty in hope that Plaintiff would soon recover was not a reasonable accommodation because there was no "reasonable prospect" that Plaintiff would return to her regular duties. Walsh, 201 F.3d at 727. MLGW was not obliged to provide a temporary light duty assignment.

Second, MLGW argues that it provided an alternative accommodation by allowing Plaintiff leave and short-term disability benefits. (ECF No. 56 at 17.) In some circumstances, "medical leave can constitute a reasonable accommodation under the ADA." Williams, 847 F.3d at 394. Because she has not responded to MLGW's argument, Plaintiff cannot show that she was entitled to light duty instead of leave with short-term disability benefits.

Plaintiff cannot establish a prima facie case of failure to accommodate because she was not qualified for the water treatment operator position, and her proposed accommodation of having another employee assist her was not reasonable. Plaintiff's other proposed accommodation of being assigned to light duty was not reasonable. It would have required MLGW to convert a temporary, relief-type role to a permanent position. Plaintiff cannot show

30

that she was entitled to temporary light duty because she did not respond to MLGW's arguments and did not show that she requested light duty when temporary light duty could reasonably have been expected to result in her return to her normal duties. Because Plaintiff cannot establish a prima facie case of failure to accommodate, MLGW is entitled to summary judgment on that claim.

**V. Conclusion**

Plaintiff has abandoned her claims of retaliation. Her claims of discrimination under Title VII, the ADEA, and the ADA do not raise a genuine issue of material fact, and MLGW is entitled to judgment as a matter of law. For the foregoing reasons, MLGW's Motion for Summary Judgment, ECF No. 55, is GRANTED on all of Plaintiff's claims.

SO ORDERED this 30th day of March, 2023.

/s/ *Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE